NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LIMITED,**
*Appellant*

**v.**

**NETFLIX, INC.,**
*Appellee*

_____

2022-2147

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2021-00303.

_____

Decided:  April 12, 2024

_____

DAN YOUNG, Quarles & Brady LLP, Littleton, CO, argued for appellant.  Also represented by KENT DALLOW; CHAD KING, King IAM LLC, Lone Tree, CO.

HARPER BATTS, Sheppard Mullin Richter & Hampton LLP, Menlo Park, CA, argued for appellee.  Also represented by JEFFREY LIANG, CHRISTOPHER SCOTT PONDER.

_____

Before TARANTO, STOLL, and STARK, *Circuit Judges*.

TARANTO, *Circuit Judge*.

In December 2020, Netflix, Inc. filed a petition seeking an inter partes review (IPR) of claims 1–14 and 16–19 of U.S. Patent No. 8,270,992, which is undisputedly owned by Avago Technologies International Sales Pte. Ltd. as assignee. Upon institution and conduct of the IPR, the Patent Trial and Appeal Board issued a final written decision holding claims 1–13 and 16–18 unpatentable for obviousness under 35 U.S.C. § 103. *Netflix, Inc. v. Avago Technologies International Sales Pte. Ltd.*, No. IPR2021-00303, 2022 WL 2190436 (P.T.A.B. June 17, 2022) (*Decision*). Avago, which asserts the '992 patent in a pending suit against Netflix, appeals the Board's decision. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A). We affirm.

The '992 patent teaches methods and systems for switching sources and, relatedly, network connections that are furnishing content to a user. In particular, if a user is receiving digital media content from a first source, the patent calls for the user to instead receive that content from a second source when the network connection with the second source enables furnishing that content at a "higher quality level" to the user. *See* '992 patent, col. 1, line 58, through col. 2, line 44. Claim 1 is representative:

1. In a portable system, a method for providing a digital media service to a user, the method comprising:

delivering digital media content having a *current quality level* to a user;

determining that a network connection with a second system is available and is characterized by a communication bandwidth that is high enough to provide the digital media content to the user at a

AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD. v.    3
NETFLIX, INC.

> *quality level higher than the current quality level*;
>
> using the network connection to obtain the digital media content at the *higher quality level* from the second system; and
>
> delivering the digital media content at the *higher quality level* to the user instead of the digital media content at the *current quality level*.

*Id.*, col. 26, lines 29–43 (emphases added).

This appeal involves the meaning of the quality-level claim terms, in phrases that refer to delivering, providing, or obtaining digital media content having or at a "current quality level" or a "higher quality level." Explaining, among other things, that "the claim language itself describes the digital media content's quality level in terms of its delivery," the Board rejected Avago's contention that the quality-level terms are "limited to the quality of the digital media content independent of any network considerations." *Decision*, at *5. Avago challenges the Board's claim-construction determination, asserting that the claimed quality levels refer only to the quality level of the digital media content at the source, before and independent of any transmission-related degradation in quality due to network-based effects. *See* Avago Opening Br. at 33–34, 37. The Board's claim construction rested solely on the claim language and other intrinsic evidence, so we review it de novo. *See Polaris Innovations Ltd. v. Brent*, 48 F.4th 1365, 1372 (Fed. Cir. 2022).

We agree with the Board that the quality-level terms concern quality level as the content is delivered to the user, which may well be affected by transmission properties, and we affirm on that basis. First, the claim language specifies (1) digital media content "having a *current* quality level" during the step of "delivering" that content "*to* a user," (2)

high enough bandwidth "to provide the digital media content *to* the user *at* a quality level higher than the current quality level," (3) "obtain[ing]" digital media content "*at* the higher quality level," and (4) "delivering the digital media content *at* the higher quality level *to* the user." '992 patent, col. 26, lines 29–43 (emphases added). That language is concerned with the quality level of the content *as received* by the user, not merely with the content quality as stored at the source. Second, the claim language encompasses digital media services that stream content for real-time consumption by a user. *See id.*, col. 3, lines 15–24 (defining a "service" as, among other things, comprising "an audio output service" or "a video output service"); *see also* J.A. 495–96, col. 1, line 17, through col. 3, line 44 (providing background information on streaming services). And the claim's reference to high-enough bandwidth confirms that network-transmission properties may affect the content quality level as that content is consumed by a user in real time. *See* '992 patent, col. 6, lines 19–30 (stating that delivery-related issues can render what would otherwise be "high quality information" of "little value" when "access . . . over a communication network . . . is slow or unreliable"); *cf. id.*, col. 4, lines 31–38 (listing the "rate at which such information may be accessed" as one metric by which the quality level of a digital media service might be determined). Overall, the claim language focuses on the as-received quality of the content, and that focus implies that the claimed quality levels need not be independent of any transmission- or delivery-related effects.

With respect to other intrinsic evidence, Avago relies principally on the prosecution history. Avago Opening Br. at 39–48. (It relies also on passages from the specification, *id.* at 48–53, but the passages do not go beyond reciting non-limiting examples.) We agree with the Board that the prosecution history, *see* J.A. 168–76, does not justify the construction Avago urges.

AVAGO TECHNOLOGIES INTERNATIONAL SALES PTE. LTD. v.          5
NETFLIX, INC.

In the prosecution history, the examiner-cited prior art was distinguished by reference to the absence of a "second system" in that prior art (which taught changing links to an unchanged source), with the applicant arguing that the lack of such a second system meant that the prior art "*necessar[ily]*" failed to disclose "delivering the digital media content at the higher quality level to the user" from that second system.  J.A. 175 (emphasis added).  Claim language was changed to require such a "second system."  J.A. 168.  That change exhausts the ultimate significance of the prosecution history, and Avago does not contend that the "second system" language calls for its proposed construction.  Rather, Avago relies on another change in the claim language—replacement of references in the body (but not the preamble) to a digital media "service" with references to digital media "content."  J.A. 168–73.  But we, like the Board, find that change not to call for adoption of the quality-level constraint that Avago now seeks to impose, because that constraint is not fairly found in the resulting claim language and the argument that Avago made to the examiner does not require that constraint.  *See Decision*, at *5 (concluding that "neither the amendment nor the related arguments exclude network-related effects on the quality levels of delivered digital media content").

Avago's additional arguments depend on its claim-construction position.  Having rejected that position, we affirm the Board's decision.

**AFFIRMED**